# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **RICHARD PETERSON,** )<br>    **PLAINTIFF,** )<br> )<br>**vs.** )<br> )<br>**TOWN OF CLAYTON, ALABAMA,** )<br>    **DEFENDANT,** ) | Case No: 2:06CV110-VPM |

## AFFIDAVIT OF THOMAS KILLINGSWORTH

Comes now the affiant, under oath, and says as follows:

1.    My name is Thomas Killingsworth. The following statements are based upon my own personal knowledge.

2.    I am the Town Clerk for Clayton, Alabama. I have been the town clerk since 1985.

3.    Richard Peterson was employed by the Town of Clayton in 2001 as a part-time police officer and later went to a fulltime status.

4.    In February of 2002, he became Assistant Chief for the Town of Clayton.

5.    While serving as Assistant Chief for the Town of Clayton, Mr. Peterson also served as Police Chief for the Town of Hurtsboro, approximately thirty miles from Clayton.

6.    In 2004, new mayors were elected in Hurtsboro and in Clayton.

7. After taking office, the new Mayor of Clayton, Shug Rowland, decided that the town would be better served by returning the shifts for the police department from twelve hour shifts back to eight-hour shifts. During most of the years I have worked for Clayton, the police worked eight-hour shifts. (The change to twelve-hour shifts was a recent development.)

8. The shifts new eight-hour shifts were as follows: (1) 7:00 a.m. to 3:00 p.m.; (2) 3:00 p.m. to 11:00 p.m.; (3) 11:00 p.m. to 7:00 a.m.

9. At the time, there were three fulltime police officers working for the Town of Clayton. Police Chief Williams' shift was the 7:00 a.m. to 3:00 p.m. Assistant Chief Peterson's shift was the 3:00 p.m. to 11:00 p.m. Officer Kenneth Lightner's shift was the 11:00 p.m. to 7:00 a.m. shift.

10. While serving as the Chief of Hurtsboro and the Assistant Chief of Clayton, no issue ever arose regarding Richard Peterson's tardiness or punctuality. The change from twelve hour shifts to eight hour shifts occurred before Peterson starting working in Montgomery. Problems with Richard Peterson's tardiness only started after he started working in Montgomery.

11. True and accurate copies of Peterson's time sheets from November of 2004 through May of 2005 are attached to this affidavit as Attachment A.

12. A true and accurate copy of the minutes of the December 13, 2004, Town of Clayton Council Meeting is attached as Attachment B. The contents of these minutes accurately reflect the events, business, and discussions from this meeting. At that meeting, the Town Council ratified the shift changes that had taken place during the week of November 21, 2004. Peterson started working in Montgomery on November 29, 2004.

13. A true and accurate copy of the Town of Clayton's Employee Handbook is attached to the affidavit as Attachment C. The handbook states that sufficient cause for reprimand, suspension, demotion, or dismissal includes an unsatisfactory record of tardiness and/or absenteeism. (Article VIII, Section 3(H)). The Handbook also states that "Each employee is expected to be on duty at the time prescribed by his particular department or division." (Article XI, Section 1.) The Handbook also states that "the Mayor shall be ultimately responsible for and have sole authority to employ/discharge employees in <u>classified</u> service. (Article II, Section 1.) <u>Non-Classified</u> employees are the Town Clerk, Police Chief, and Recreation Director. The City of Clayton is an equal opportunity employer. It has a policy against racial discrimination in employment. (Article XIII, Section 2) The Town has a grievance procedure that forbids discipline or discrimination against an employee for the use of such procedure. (Article VII) The Town also has a

procedure for appealing suspensions, demotions, and dismissals to the Town Council. (Article VIII)

14. A true and accurate copy of correspondence from Mayor Rowland to Assistant Chief Richard Peterson dated April 27, 2005 is attached to this affidavit as Attachment D. It is a notice of determination hearing that was to be held Tuesday, May 3, 2005. It charges Peterson with (1) an unsatisfactory record to meet the time frame for his assigned shift and (2) insubordination.

15. A true and accurate copy Peterson's waiver of the determination hearing dated May 1, 2005 is attached to this affidavit as Attachment E. Article VIII, Section 5(A)(4) of the Employee Handbook states that an employee may waive his determination hearing. It also states that, "Waiver of the Determination Hearing shall be considered an admission that the charges against the employee are correct. In the event of waiver, the Mayor shall render his/her decision within five (5) working days of the date on which the Determination was set."

16. A true and accurate copy of correspondence from Mayor Rowland to Assistant Chief Richard Peterson dated May 6, 2005 is attached to this affidavit as Attachment F. It is a notice of termination.

17. A true and accurate copy of correspondence from Richard Peterson to me dated May 10, 2005 is attached to this affidavit as Attachment G. This was a notice of Appeal pursuant to Article VIII,

Section 5 of the Employee Handbook. Once I received this notice, I notified the members of the Town Council. A special Council meeting was set for May 19, 2005.

18. A true and accurate copy of the minutes of the May 19, 2005 Town of Clayton Special Council Meeting is attached as Attachment H. The contents of these minutes accurately reflect the events at this meeting. At that meeting, the Town Council affirmed and ratified the termination of Peterson.

19. A true and accurate copy of a release signed by Peterson releasing the Town of Clayton, dated July 15, 2005 is attached to this affidavit as Attachment I.

20. A true and accurate copy of correspondence from me to Richard Peterson dated August 7, 2001 is attached to this affidavit as Attachment J. While Peterson later became a full time police officer, this letter is typical of letters that are sent to individuals who are interested in part-time, "on-call" employment as police officers with the town of Clayton. Among other things, the letter states that, "you will only be called when needed." The Town of Clayton will employ part-time officers to help the town and allow the fulltime officers to have occasional days off. These are normally officers from the sheriff's department or other municipalities. During 2004 through May of 2005, however, the town had only three fulltime officers: Williams, Peterson, and Lightner.

21. Peterson and Lightner are black. Williams is white.

22. Prior to Mayor Rowland taking office, Lightner worked full time for the Town of Clayton and he worked for the Town of Hurtsboro. I do not know for a fact whether he was fulltime or part-time with Hurtsboro. I do know that he and Peterson were the only fulltime Clayton Police Officers who had second jobs. When Lightner was working for Hurtsboro, his schedules did not in conflict with one another and he did not have a problem with habitual tardiness.

23. As clerk for the Town of Clayton:

    a. I know with certainty of no other police officer for Clayton, other than Peterson, who had two fulltime jobs. (As I stated, I do not know with certainty whether Lightner's job with Hurtsboro was fulltime or part-time. I know that Williams only had one job: Chief of Police of Clayton.)

    b. I am aware of no fulltime employee of Clayton who has or ever had a second, fulltime job.

    c. I am aware of no fulltime employee of Clayton who has or ever had a second, fulltime job approximately 73 miles from Clayton. (Montgomery is approximately 73 miles from Clayton)

    d. I am aware of no employee who worked two fulltime jobs with overlapping job schedules.

    e. I am aware of no fulltime employee whose schedule was adjusted by the Town of Clayton to accommodate a second fulltime job.

    f. I am aware of no employee of the Town of Clayton who has been habitually tardy for work that in any way compares to the <u>number of days</u> Peterson was tardy during the last months of his employment, from December 2004 through May of 2005. Therefore, I am aware of no employee who

      remained employed by the Town of Clayton who was tardy the number of times Peterson was tardy during the last months of his employment.

g.    I am aware of no employee whose habitually tardiness in any way compared to the number of days and <u>the average number of minutes and hours</u> Peterson was tardy during the last months of his employment, from December 2004 through May of 2005. Therefore, I am aware of no employee who remained employed by the Town of Clayton who was tardy the number of days and <u>the average number of minutes and hours</u> Peterson was tardy during the last months of his employment.

24.    Mr. Peterson's race was not a factor in his termination. Any complaints Mr. Peterson made regarding race, or any other matters, were not factors in his termination.

25.    At the time Peterson was terminated, the only white police officer for the town was Chief Jamie Williams. A few weeks after Peterson was terminated, Chief Williams was terminated. His termination was ratified by the Town Council on June 13, 2005.

26.    Following the terminations of Peterson and Williams, Clayton hired two additional police officers. One was Robert Patrick. He was hired as the Chief of Police for Clayton. Chief Patrick is black. The other officer was Aaron Grubbs. Aaron Grubbs is black. Both Patrick and Grubbs are still employed by the Town of Clayton.

Further affiant sayeth not.

Dated this the ____ day of October, 2006.

---

**AFFIDAVIT OF THOMAS KILLINGSWORTH**
**PAGE 7**

_____
THOMAS KILLINGSWORTH

**STATE OF ALABAMA** )
)
**COUNTY OF BARBOUR** )

Before me, the undersigned Notary Public in and for said state and county, personally appeared **THOMAS KILLINGSWORTH**, who is known to me. Having been duly sworn, **THOMAS KILLINGSWORTH** testified that the foregoing statements are true and correct to the best of his personal knowledge.

This the 27th day of October, 2006.

[SEAL]

_____
Notary Public
My Commission Expires 7.7.09

---

AFFIDAVIT OF THOMAS KILLINGSWORTH
PAGE 8