IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RICHARD PETERSON, ) | |
|     PLAINTIFF, ) | |
| ) | |
| vs. ) | Case No: 2:06CV110-VPM |
| ) | |
| TOWN OF CLAYTON, ALABAMA, ) | |
|     DEFENDANT, ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S ANSWER TO
MOTION FOR SUMMARY JUDGMENT**

Comes now the Defendant, Town of Clayton, and replies to the Plaintiff's Answer to Motion for Summary Judgment as follows:

*Affidavit of Thomas Killingworth*

In his response, the plaintiff states that "the Court cannot consider the unsigned Affidavit of Thomas Killingworth and the attachments thereto."(Document 27, Page 4).

The Affidavit of Thomas Killingworth <u>is</u> signed. (Document 23, Part 3 (exhibit 2), Page 9). It complies with Federal Rule of Civil Procedure 56(e).[1]

*<u>Combs v. Plantation Patterns</u> and Attack of Affidavit of Shug Rowland*

In his response, the plaintiff states that Mayor Shug Rowland's testimony is not to be believed and cites <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519 (11th Cir. 1997) to support this proposition. The plaintiff's argument that the mayor should not be believed seems to hinge on the mayor's decision to return the police shifts back to eight hour shifts. The plaintiff states that <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) "squarely guides this

---

[1] The plaintiff may have noticed that Mr. Killingworth did not fill in the blank provided for the exact day in October of 2006 that he signed the affidavit, and the plaintiff may have mistakenly thought that Mr. Killingworth did not sign the affidavit. The affidavit, however, is signed. It is dated "October, 2006." It is notarized. It complies with Rule 56(e).

court to conclude that Rowland's testimony is not to be believed…"  The plaintiff does not elaborate on how exactly <u>Combs</u> does this.  In fact, <u>Combs</u> does nothing of the sort.  <u>Combs</u> contains the following language:

> The district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence. . . .

<u>Combs v. Plantation Patterns,</u> 106 F.3d 1519, *1538 (11th Cir. 1997) (citation and internal quotation marks omitted)

The plaintiff has not demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions.  Moreover, the plaintiff does not attack the "reasons for [Clayton's] actions" in his response.  That is, the plaintiff does not attack the reasons for Peterson's termination:  habitual tardiness and insubordination.  On this, the plaintiff is silent.  Instead, the plaintiff attacks the wisdom of returning to an eight hour shift.

While the entire argument regarding the change back to the eight hour shifts may be little more than a red herring, there are several facts that need to be addressed.

First, the change from eight (8) hour shifts to twelve (12) hour shifts was a recent development for the City. (Affidavit of Thomas Killingworth, page two, paragraph seven).  When the shift arrangement was returned to eight (8) hour shifts, it was reversing a recent change.  It was not a radical, racist or unusual decision.

Second, eight hour (8) shifts created three shifts per day.  At the time, Clayton had three full time police officers.

Third, most of the law enforcement jobs the plaintiff ever had involved eight (8) hour shifts. (Deposition of Richard Peterson, 46.7 – 52.1, 70.19 - 71.1) Again, there is nothing radical, racist or unusual about eight hour shifts.

Fourth, the decision to return to eight hour shifts was made before Peterson started his second fulltime job. (Deposition of Richard Peterson, 78.6 – 78.10; Affidavit of Thomas Killingsworth, page 3 ¶ 12; Affidavit of Shug Rowland, page 2 ¶ 5).

Fifth, a review of Peterson's timesheets from a few days before the return to eight hour shifts shows that he was working the 6:00 a.m. to 6:00 p.m. shift. (Affidavit of Thomas Killingworth, Attachment A, timesheets for 10/29/2004 through 11/14/2004).[2]  This would also have conflicted with the second full time job in Montgomery.

Sixth, the return to eight (8) hour shifts from twelve (12) hour shifts <u>freed up four more hours</u> in Peterson's day. Peterson was habitually late to work in Clayton when he was working two fulltime jobs that each required approximately eight hours of his day, plus approximately two (2) to three (3) hours of total travel time. (Deposition of Richard Peterson, 84.2 – 84.10). With the eight hour shift in Clayton, Peterson would, theoretically[3], be working or traveling to and from work eighteen (18) to nineteen (19) hours of each work day. Apparently the plaintiff's argument is that if Clayton had required <u>four more hours</u> of his time each day, he would not have been habitually late.

Summary judgment is due to be granted.

---

[2] Peterson was asked about this in his deposition. He stated that he did not recall what the shift arrangements were prior to the return to eight (8) hour shifts. (Peterson's Deposition 74.20 – 75.1)
[3] This is theoretical because Peterson, in fact, rarely got to work on time.

Dated this the 27th day of November, 2006.

/s/ R. Todd Derrick
R. Todd Derrick (DER006)

OF COUNSEL:
COBB, SHEALY, CRUM, DERRICK & PIKE
Post Office Box 6346
Dothan, Alabama 36302
(334) 677-3000
(334) 677-0030

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically served a copy of this document upon:

Malcolm R. Newman, Esquire
Post Office Box 6137
Dothan, Alabama 36302
(334) 792-2132

This the 27th day of November, 2006.

/s/ R. Todd Derrick
R. Todd Derrick (DER006)